**Jerry CAPODILUPO, Plaintiff,**

v.

**Edward J. McCORMACK, Jr., and John M. Rufo, Defendants.**

**Civ. A. No. 69–634.**

United States District Court,
D. Massachusetts.

July 22, 1970.

Eugene X. Giroux, Boston, Mass., for plaintiff.

Joseph H. Elcock, Jr., Boston, Mass., for Edward J. McCormack, Jr.

Vincent J. Panico, Cambridge, Mass., for John M. Rufo.

## OPINION

CAFFREY, District Judge.

This is a civil action, plaintiff is a resident of Florida, defendants are residents of the Commonwealth of Massachusetts, and the amount in controversy exceeds $10,000. The complaint alleges that plaintiff and the two defendants jointly executed a promissory note in the amount of $55,000, payable October 31, 1965, to the First National Bank of Boston; that the makers defaulted thereon; that the bank duly notified them of the default and thereafter brought a lawsuit against plaintiff which culminated in a judgment for the bank and an execution in the amount of $65,054.10 which plaintiff satisfied. The theory of the complaint is that defendants are jointly and severally liable to plaintiff as co-makers with him of the note and that plaintiff's demands for contribution from defendants have been refused.

After trial I find and rule as follows:

Plaintiff Capodilupo is a former resident of Massachusetts who moved to Hollywood, Florida, approximately eight years ago and is now a resident of Florida. An agreement was made between plaintiff and defendant Rufo, on May 25, 1965, for the erection of an apartment house to be called Barclay House, at 1530 Beacon Street, Brookline, Massachusetts. Under the terms of the agreement, plaintiff received a 45% interest in Barclay House and was to handle rental of the apartments therein. Rufo was to be in charge of the construction. At the time this agreement was executed, Barclay House, Inc. was an existing Massachusetts corporation which owned the land at 1530 Beacon Street, Brookline. All 1,000 outstanding shares of stock issued in Barclay House, Inc. were then owned by First Liberty Corporation. Rufo made the representation in the agreement that he had a right to purchase all 1,000 shares of Barclay House, Inc. from First Liberty Corporation, but that as to 450 shares he had transferred his right to purchase to one Moffie. The agreement provided that in the event of a default by Moffie or in the event of the acquisition of Moffie's stock by Capodilupo and Rufo, then the outstanding shares would be divided, 501

shares to Capodilupo and 499 to Rufo. Rufo further represented to Capodilupo that there were available sufficient funds from a construction mortgage to complete the building of the apartment house "save for $20,000 worth of owner items." Rufo represented, also, that he had a right to nominate, elect and appoint all officers and directors of Barclay House, Inc. under his agreement with First Liberty, and that upon request by plaintiff he would nominate, elect and appoint all officers and directors as nominated by plaintiff. Rufo also transferred to plaintiff as security for the performance of the agreement all of his interest in the capital stock of Barclay House and agreed to deliver to Capodilupo 275 shares of capital stock of Barclay House in consideration of Capodilupo's paying him $50,000.

Defendant McCormack testified that the note was executed as alleged in the complaint and that the purpose of the note was to obtain money to make an FHA payment then overdue from Barclay House. He further testified that Barclay House was a wholly-owned subsidiary of Childs Properties, which was a subsidiary of Childs Security, a bond house in New York. First Liberty, according to McCormack, was "the technical name of Childs Properties." McCormack also testified that First Liberty was "moored to Columbia University." McCormack was an attorney for First Liberty but had nothing to do with the organization or incorporation of Barclay House. He stated that he had a contract with First Liberty for a fee of $1,000 a month, plus an undisclosed percentage of the properties they constructed. The builder of Barclay House was a "non-profit" corporation, Kelwyn Construction Company, which was also "a part of First Liberty." McCormack conceded that there is no question that he made the note in suit, that the note was used for Barclay House, and that he has made no payment on the note despite demand therefor. He also stated that he made a separate note for $75,000 payable to Moffie.

At the trial plaintiff conceded that because of certain credits which were made available to the First National Bank from the proceeds of the sale of Barclay House against the execution that the bank obtained on the basis of the note in issue herein, he actually disbursed only $30,000 therefor. (It was stipulated that the payment was $29,-196.40.) It further appears from the testimony that when Barclay sought to obtain the $55,000 from the First National Bank, the bank's attorney, one Nexon, refused to make the loan on the basis of Rufo's signature and insisted that plaintiff Capodilupo and defendant McCormack also sign as co-makers. McCormack further testified that his law office did 25% of all FHA legal business in Massachusetts and that he did not wish to be blacklisted by FHA from this lucrative practice, and that he had this interest in his firm's reputation in mind in signing the note to obtain funds for the purpose of preventing Barclay House from becoming delinquent on its obligation to FHA. There was testimony to the effect that McCormack at the time of the execution of the note, on June 30, 1965, was the holder of record of a 45% interest in Barclay House, and there also was evidence that he shared this 45% interest equally with two associates, Spiegel and Schuster.

McCormack claims that he had an oral contract with plaintiff and Rufo which recognized that because of this division of his 45% interest with his two associates, he, personally, actually had only a 15% interest in his own right, and that he had an oral understanding with plaintiff and Rufo at the time he signed the note that his liability, if any, on the note, would not exceed 15% of the total liability resultant from their signing the note. I find that while this may have been McCormack's intention, no binding contract so providing, oral or written, was ever made between McCormack and the original payee, or between McCormack and his two co-makers. I base this finding both on my

evaluation of the testimony of the witnesses at trial and on the absence of a writing evidencing the claimed 15% limitation on McCormack's liability, having in mind that the parties were careful to reduce all other relevant agreements, some of which were very complex, to writing.

While the law in Massachusetts is clear that co-makers' obligations *inter se* may be varied between them by either written or parol agreements, there nevertheless exists a right of contribution in the case of joint and several debtors who are principals if their obligations are equal in kind and degree. Quintin v. Magnant, 285 Mass. 450, 189 N.E. 209 (1934). *Quintin* expressly rules that the obligation "may be modified by contract" (at 451, 189 N.E. 209), but I rule that no valid contract varying the obligations of the co-makers has been proved herein. Hence, other language in *Quintin*, (at 452, 189 N.E. at 210), applies, namely, that "persons assuming a common burden shall bear it equally."

Consequently, I rule that each of the defendants, McCormack and Rufo, is liable to plaintiff for one-third of the amount he concededly paid to the First National Bank of Boston in discharge of the note which gave rise to this suit.

Judgment for plaintiff against defendant Edward J. McCormack, Jr. in the amount of $9732.14.

Judgment for plaintiff against defendant John M. Rufo in the amount of $9732.14.

The defendant McCormack has counterclaimed for legal services allegedly performed on behalf of plaintiff Capodilupo in connection with the note transaction, in an amount to be determined by this court. After hearing I rule that no evidence was offered tending to establish the value of the legal services allegedly performed for plaintiff by McCormack, and in the absence thereof the counterclaim is dismissed.